[No. C031508. Third Dist. Mar. 24, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL MICKEY FRADIUE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi

and John A. Thawley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—Following denial of his motion to exclude a confession given without *Miranda*[1] warnings, defendant was tried and convicted by a jury on one of two counts of being in possession of heroin in a state prison. (Pen. Code, § 4573.6.) He was also found to have suffered six prior serious felony convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and to have served a prior prison term (Pen. Code, § 667.5, subd. (b)). Defendant was sentenced to an indeterminate term of 25 years to life, to run consecutively to the terms being served at the time of the offense. Defendant was also sentenced to 12 months for the prior prison term which the court stayed in the interest of justice. He appeals, contending the court erred in denying his *Miranda* motion and the sentence imposed amounts to cruel and unusual punishment. We affirm.

### FACTS AND PROCEDURAL HISTORY

In light of the contentions raised on appeal, a detailed recitation of the facts of the underlying offense is unnecessary.[2]

On June 26, 1997, defendant was an inmate at the California State Prison, Sacramento. That day, correctional officer David Prasinos searched a cell occupied by defendant and another inmate and discovered, on the top shelf of the lower shelving unit, two cellophane balls containing a total of eight wrapped pieces of paper with a "brown tarry substance" on them. Each piece of paper contained .01 grams of heroin. Prasinos also found defendant's state identification card and letters addressed to defendant on the same shelving unit.

An internal administrative proceeding was initiated against defendant for a prison infraction. In connection with such proceedings, the Department of Corrections assigns an "investigating employee" to gather information to be presented to a hearing officer. Typically, the investigating employee interviews the inmate to assist in obtaining witnesses and gathering evidence on the defendant's behalf. However, the inmate has the option of rejecting the

---

[1] *Miranda v. Arizona* (1996) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2] The facts are taken from the transcript of the jury trial. However, as to matters relating to defendant's *Miranda* motion, the facts are taken from the transcript of the *Miranda* hearing.

investigating employee assigned to the matter, in which case a new investigating employee is selected. (Only one such rejection is permitted.)

Correctional officer Clarence Callahan was designated the investigating employee for the administrative proceedings initiated against defendant. Callahan interviewed defendant on July 23, 1997. At the time, defendant was being housed in the administrative segregation section of the prison because of the charges against him.

Callahan came to defendant's cell and informed defendant he had been assigned as the investigating employee. Callahan remained outside the cell while defendant either squatted or sat just inside the cell door. They communicated through a food tray port. Defendant was informed he had a right to reject Callahan, but defendant declined to do so. Defendant retrieved some paperwork regarding the administrative charges and read them for two or three minutes. Callahan then asked: "Were the drugs found by Officer Prasinos on the top shelf of the lower shelving unit belonging to you?" Defendant responded: "I admit that I had possession of the drug, but I was not trafficking it."

In all, the interview lasted 25 to 30 minutes. Defendant did not identify any witnesses he wanted Callahan to interview in connection with the charges but asked that correctional officers Prasinos and Okray be present at the hearing in connection with defendant's personal property.[3] Defendant's primary concern at the time was the protection of his property from theft by other inmates in the event of his transfer to a secure housing unit at either the Corcoran or Pelican Bay Prison. Defendant testified that the only reason he agreed to be interviewed by Callahan was to secure help in protecting his property. He further testified the only reason he admitted possession of the drugs, while denying trafficking, was to avoid being sent to a secure housing facility.

Defendant was charged in the present matter with two counts of being in possession of heroin in a state prison and six prior serious felony convictions and one prior prison term. At the commencement of trial, he moved to suppress his confession because of Callahan's failure to advise defendant of his *Miranda* rights. A hearing was conducted and the motion was denied. Defendant was thereafter convicted by a jury on one of the two counts, and the prior conviction charges were found true. Defendant was sentenced under the three strikes law to a consecutive term of 25 years to life.

---

[3]Defendant testified Prasinos was one of the officers who gathered his property from the cell. Okray was not mentioned by defendant but presumably was also involved in gathering defendant's property.

DISCUSSION

I

*Failure to Give Miranda Advisement*

■ Defendant contends Callahan was required to advise him of his *Miranda* rights before conducting the July 23 interview and, therefore, defendant's confession during the interview should have been suppressed.

■ Before a suspect may be subjected to a custodial interrogation, he must be advised that he has the right to remain silent, that his statements can be used against him and that he has a right to consult with or have an attorney present. (*Miranda v. Arizona, supra,* 384 U.S. at pp. 467-471 [86 S.Ct. at pp. 1624-1626, 16 L.Ed.2d at pp. 719-722].) In *Mathis v. United States* (1968) 391 U.S. 1, 4-5 [88 S.Ct. 1503, 1504-1505, 20 L.Ed.2d 381, 385], the federal high court extended these safeguards to prison inmates.[4]

■ Defendant contends the present matter is controlled by *Mathis.* However, he acknowledges that a number of lower federal court decisions have carved out an exception to *Mathis* where the interrogation is conducted under circumstances where no restraint is placed upon the inmate over and above that associated with his prisoner status.

In *Cervantes v. Walker* (9th Cir. 1978) 589 F.2d 424, a county jail inmate was taken to the jail library for questioning about a recent fight. The defendant left his property outside the library as directed and it was searched. A small amount of "a green odorless substance" was found inside a matchbox. (*Id.* at pp. 426-427.) The searching officer suspected it was marijuana but had no special training in this regard. He took the substance into the library and asked the defendant what it was. The defendant responded: " 'That's grass, man.' " The defendant was placed under arrest for possession of marijuana. (*Id.* at p. 427.)

The court rejected the defendant's argument that *Mathis* requires *Miranda* warnings in all prison interrogations: "To interpret *Mathis* as Cervantes urges would, in effect, create a per se rule that any investigatory questioning inside a prison requires *Miranda* warnings. Such a rule could totally disrupt prison administration. *Miranda* certainly does not dictate such a consequence. . . . [¶] Adoption of Cervantes' contention would not only be

---

[4]In *Mathis*, the trial court refused even to conduct a hearing on the defendant's *Miranda* claim and so there was no evidence of the circumstances surrounding the prison interrogation. (391 U.S. at p. 3 [80 S.Ct. at p. 1504, 20 L.Ed.2d at p. 384].)

inconsistent with *Miranda* but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart. We cannot believe the Supreme Court intended such a result." (*Cervantes v. Walker, supra,* 589 F.2d at p. 427.)

In formulating an appropriate test in a prison setting, the court recognized that the usual test of whether a reasonable person would have believed he was free to leave ceases to be useful. (*Cervantes v. Walker, supra,* 589 F.2d at p. 428.) Obviously, the inmate is not free to leave. The question must therefore shift to whether some extra degree of restraint was imposed upon the inmate to force him to participate in the interrogation. Four factors are significant in this inquiry: (1) the language used to summon the inmate for questioning, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure exerted to detain him. (*Ibid.*)

Subsequent federal circuit court opinions have applied the test articulated in *Cervantes* to find no *Miranda* violation. (See *U.S. v. Turner* (9th Cir. 1994) 28 F.3d 981, 983-984 [statements made in telephone call initiated by inmate from jail to postal inspector]; *Garcia v. Singletary* (11th Cir. 1994) 13 F.3d 1487, 1491-1492 [inmate removed from his cell and questioned immediately after a fire is discovered inside the cell]; *United States v. Conley* (4th Cir. 1985) 779 F.2d 970, 971-974 [one prisoner is stabbed to death and the defendant is discovered with a wrist wound shortly thereafter; he was questioned while in a conference room awaiting transfer to an infirmary and following return from the infirmary]; *United States v. Scalf* (10th Cir. 1984) 725 F.2d 1272, 1273, 1275-1276 [following a stabbing in which the defendant was observed in the act, a prison guard came to his cell and asked " 'what was going on . . .' "; the defendant responded that he did not like the victim].) In *People v. Anthony* (1986) 185 Cal.App.3d 1114, 1120-1121 [230 Cal.Rptr. 268], the Court of Appeal also applied the *Cervantes* exception where the defendant made incriminating statements to police during telephone conversations from jail that had been initiated by the defendant.

Defendant contends the present matter does not fall within the exception to *Mathis* recognized in *Cervantes* and subsequent cases. According to defendant, the pressures exerted by Callahan in announcing himself as a fact finder in defendant's administrative proceeding and interrogating defendant through a slot in his administrative segregation cell door "formed an 'inherently compelling' pressure to which the authors of *Miranda* intended their decision to apply." We are not persuaded.

Regarding the factors identified in *Cervantes,* defendant was not even summoned for questioning. Callahan came to defendant's cell. Defendant's

cellmate was also present at the time. Defendant was not handcuffed or otherwise restrained inside the cell. Callahan remained outside during the interview and informed defendant he was free to reject Callahan as the investigating employee. Callahan testified that an inmate is not required to cooperate with an investigating employee, in which case the investigating employee conducts the investigation without the inmate's help. The interview is for the purpose of assisting the inmate in preparing a defense to the administrative charges, and the inmate is free to decline the interview and to terminate it at any time. Defendant acknowledged he was free to walk away from the door of the cell and stop talking to Callahan at any time. Finally, defendant was not confronted with any evidence of his guilt.

"To determine whether prison officials have applied an additional restraint, further restricting an inmate's freedom and triggering *Miranda* warnings, courts must consider the totality of the circumstances surrounding the alleged interrogation." (*Garcia v. Singletary, supra,* 13 F.3d at p. 1492.) In our view, under the totality of the circumstances presented, no restraints were placed upon defendant to coerce him into participating in the interrogation over and above those normally associated with his inmate status. Hence, *Miranda* warnings were not required, and the trial court correctly rejected defendant's motion to suppress his confession.

II

*Cruel and Unusual Punishment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2000. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 15.