Filed 10/29/14  P. v. Broaden CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F066626 |
| v. | (Super. Ct. No. DF10587A) |
| MARVIN BROADEN, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J., and Poochigian, J.

A jury convicted appellant, Marvin Broaden, on two counts of battery on a correctional officer (counts 2 & 3/Pen. Code, § 4501.5)[1] and found true an allegation that Broaden had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(i)).

On appeal, Broaden contends: (1) the court erred in admitting a statement that was obtained in violation of his *Miranda*[2] rights; (2) the jury failed to make a finding on the three strikes allegation; and (3) the court abused its discretion when it denied his *Romero*[3] motion. We will affirm.

## FACTS

On July 16, 2011, at approximately 1:45 p.m., while incarcerated at Kern Valley State Prison, Broaden yelled out to Correctional Officer Mercado from his cell on the second tier that he was suicidal. Prison protocol required Officer Mercado to place a suicidal inmate in a holding cell and contact "psych" personnel who would then talk to the inmate. Officer Mercado opened the food port to Broaden's cell and had Broaden turn around so Mercado could handcuff his arms behind his back through the port and escort him to the holding cell. Officer Mercado handcuffed Broaden and after Officer Anaya opened the door from the control booth, he began escorting Broaden out of his cell. As Mercado and Broaden were exiting the cell Broaden quickly turned to his right, pushing his shoulder into Mercado's chest, which moved Mercado backwards and caused him to lose his balance. Broaden also squatted down and attempted to lift Officer Mercado up. Officer Mercado, however, was able to take Broaden down by wrapping his right arm around the back of Broaden's neck and grabbing Broaden's left leg with his left

---

[1]    Unless otherwise indicated all further statutory references are to the Penal Code.

[2]    *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[3]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

arm. Meanwhile, Officer Anaya pushed an alarm that alerted other officers who helped subdue Broaden and place him in a two-foot-by-two-foot temporary holding cell located less than 100 feet from his regular cell.

Licensed Vocational Nurse Donatus Ugboaja was called to examine Broaden for injuries and to fill out form 7219, which is completed whenever there is an incident with an inmate. As part of the procedure, Nurse Ugboaja asked Broaden if he had any comment.[4] Broaden replied, "I beat up an officer because he urinated in my toilet and said I was suicidal when I was not." Nurse Ugboaja then examined Broaden but did not find any injuries on him.

On January 13, 2012, at approximately 12:28 p.m., Officer Trotter went to the holding cell where Broaden was temporarily being held wearing waist restraints. Trotter instructed him to face the rear of the cell and Broaden complied. However, after Trotter opened the cell door, Broaden spun around so he was outside the cell door and kicked Officer Trotter in the right knee. Trotter grabbed Broaden and took him to the ground.

On May 2, 2012, the district attorney filed an information charging Broaden with attempted murder (count 1/§§ 664 & 187, subd. (a)), two counts of battery on a correctional officer (counts 2 & 3), a serious felony enhancement (§ 667, subd. (a)), and with having a prior conviction within the meaning of the three strikes law.

On December 6, 2012, the jury found Broaden guilty on counts 2 and 3 and they found true the three strikes allegation.

On January 22, 2013, the court denied Broaden's *Romero* motion and sentenced him to an aggregate term of eight years: on count 2, the middle term of three years,

---

**4**  Prior to the taking of testimony, the court held a hearing on the defense's motion to exclude Broaden's statement to Nurse Ugboaja because it was allegedly obtained in violation of *Miranda*. The court denied the motion finding that for purposes of *Miranda*, Broaden was in custody, but he was not interrogated by Nurse Ugboaja.

doubled to six years because of Broaden's prior strike conviction; and on count 3, a consecutive two-year term, one-third the middle term of three years doubled to two years because of Broaden's prior strike conviction.

## DISCUSSION

### *The Miranda Issue*

Broaden contends the court erred in admitting his statement to Nurse Ugboaja that he beat up a correctional officer. We disagree.

"As a prophylactic safeguard to protect a suspect's Fifth Amendment privilege against self-incrimination, the United States Supreme Court, in *Miranda*, required law enforcement agencies to advise a suspect, before any custodial law enforcement questioning, that 'he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' [Citations.] If the suspect knowingly and intelligently waives these rights, law enforcement may interrogate, but if at any point in the interview he invokes the right to remain silent or the right to counsel, 'the interrogation must cease.' [Citations.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 947.)

However, the advisement of *Miranda* rights is only required when a person is subject to custodial interrogation. Custodial interrogation has two components. First, the person being questioned must be in custody. (*People v. Mickey* (1991) 54 Cal.3d 612, 648 (*Mickey*).) "Custody, for these purposes, means that the person has been taken into custody or otherwise deprived of his freedom in any significant way. [Citation.]" (*People v. Mosley* (1999) 73 Cal.App.4th 1081, 1088 (*Mosley*).)

A prison inmate may be "in custody" for purposes of *Miranda*. (*Mathis v. United States* (1968) 391 U.S. 1, 4-5; *People v. Fradiue* (2000) 80 Cal.App.4th 15, 19 (*Fradiue*).) However, *Miranda* warnings are not required for all investigatory

4

questioning of a prison inmate. (*Cervantes v. Walker* (9th Cir. 1978) 589 F.2d 424, 427 (*Cervantes* ); *Howes v. Fields* (2012) __ U.S. __ [132 S.Ct. 1181, 1191–1193].)

In *Cervantes*, the Court of Appeal for the Ninth Circuit set forth the following factors that should be reviewed for determining whether a prison inmate is in custody for purposes of *Miranda*: (1) the language used to summon the inmate for questioning; (2) the physical surroundings of the interrogation; (3) the extent to which the inmate is confronted with evidence of his guilt; and (4) the additional pressure exerted to detain him. (*Cervantes, supra,* 589 F.2d at p. 428.) The *Cervantes* test has been adopted by California courts. (*People v. Macklem* (2007) 149 Cal.App.4th 674, 687, 695-696; *People v. Fradiue*, *supra*, 80 Cal.App.4th at pp. 20-21; *People v. Anthony* (1986) 185 Cal.App.3d 1114, 1122.)

The second *Miranda* component is obviously interrogation. (*Mickey*, *supra*, 54 Cal.3d at p. 648; *Mosley*, *supra*, 73 Cal.App.4th at p. 1088.) "For *Miranda* purposes, interrogation is defined as any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. [Citation.]" (*Mosley*, *supra*, at p. 1089.)

"Absent 'custodial interrogation,' *Miranda* simply does not come into play. [Citations.]" (*Mickey*, *supra*, 54 Cal.3d at p. 648.) "Just as custodial interrogation can occur in the absence of express questioning [citation], *not all questioning of a person in custody constitutes interrogation under Miranda.* [Citations.]" (*People v. Ray* (1996) 13 Cal.4th 313, 338, italics added.)

"In reviewing *Miranda* issues on appeal, we accept the trial court's resolution of disputed facts and inferences as well as its evaluations of credibility if substantially supported, but independently determine from undisputed facts and facts found by the trial court whether the challenged statement was legally obtained. [Citations.]" (*People v. Smith* (2007) 40 Cal.4th 483, 502.) We apply federal standards in reviewing a

5

defendant's claim that a challenged statement was obtained in violation of *Miranda*. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1033.)

"Statements obtained in violation of *Miranda* are not admissible to establish [the defendant's] guilt." (*People v. Boyer* (1989) 48 Cal.3d 247, 271, overruled on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) The erroneous admission of a statement obtained in violation of *Miranda* is reviewed under the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 309-310; *People v. Cunningham* (2001) 25 Cal.4th 926, 994.)

Here, after Broaden attacked a correctional officer, he was placed in the holding cell in order to be examined for injuries. Thus, the first *Cervantes* factor does not apply. Further, although the cell was very small, Broaden was placed there in order to be examined by Nurse Ugboaja for injuries. Additionally, the holding cells were used to temporarily hold inmates for other reasons in addition to when they are being examined for injuries or when they are being uncooperative. Thus, even though Broaden was handcuffed and in a small enclosure, there was nothing inherently coercive in Broaden being placed there temporarily in order to be medically examined. Moreover, Broaden was not confronted with any evidence against him and there was no additional pressure exerted to detain him. We also note that the nurse's question to Broaden "... was not 'inquisitorial,' 'intimidating,' or 'accusatory.' [Citation.]" (*People v. Terry* (1970) 2 Cal.3d 362, 383.) Accordingly, we conclude that Broaden's statement to Nurse Ugboaja was not a result of a custodial interrogation.

In any case, any error in admitting the challenged statement did not prejudice Broaden. Correctional Officer Anaya corroborated Officer Mercado's testimony that Broaden assaulted him when Mercado was taking Broaden out of his cell and Broaden did not testify or provide any other evidence to contradict the officers' testimony.

6

Further, during his closing argument Broaden's defense counsel conceded that Broaden shoved Officer Mercado and focused his argument on whether the prosecution had proven the attempted murder charge.[5]  Accordingly, we conclude the court did not err when it denied Broaden's motion to suppress his statement to Nurse Ugboaja on *Miranda* grounds and, alternatively, that any error in doing so was harmless beyond a reasonable doubt.

***The Three Strikes Allegation***

Broaden contends the matter must be remanded for resentencing because the jury failed to make a true finding on the three strikes allegation.  We disagree.

After the jury returned a verdict, but prior to the court having the verdict read into the record, the court stated:

> "... The record [will] reflect that I did have the opportunity to speak with counsel.
>
> "The finding on the charges appear to be in order.  *The jury did reach a finding on the prior conviction as to the 667 (a) through (e).*  Not on the (a).  We'll be able to put that on the record in a moment."  (Italics added.)

The court then had the clerk read the verdicts on the substantive offenses into the record and the jury foreman was asked if that was the jury's true and correct verdict.  However, the court neglected to have the clerk read the verdict on the three strikes

---

**5**      At one point defense counsel argued:  "This is not an attempt[ed] murder.  Attempt[ed] murder you don't get much more serious than that....  [T]hat's what he's charged with here.  This is an incredibly serious case.  *You don't charge someone with attempt[ed] murder over a shove, and that's what this case is.*  He's no angel.  I'm not going to tell you he's an angel....  He's not guilty of attempt[ed] murder.  This is not attempt[ed] murder."  At another point defense counsel stated:  "*[W]e don't convict people of serious crimes like attempted murder over a shove* when that person is dealing with a mental crisis.  They're suicidal.  *[W]e don't convict people of attempted murder for that*."  (Italics added.)

allegation to the jury or to have the jury or the jury foreman acknowledge the verdict on that allegation.

After the jurors were excused and had left the courtroom, the following colloquy occurred:

> "THE COURT: ¶ … ¶ There's one thing I pointed out to counsel at sidebar. There's no problem with the verdict form itself except on the finding on the prior conviction, *the jury did have a true finding or found the defendant had suffered the prior conviction under the strike*, but did not make a finding as to the 667(a).
>
> "In light of the fact that there was a not guilty on the attempted murder, your thoughts, Mr. Foltz [defense counsel]?
>
> "MR. FOLTZ: Yes, Your honor. There's -- that's the only strike alleged. That's the only thing to which the 667(a) was relevant. The Court did ... so I don't see any issues on that.
>
> "THE COURT: Mr. McKillop [the prosecutor]?
>
> "MR. McKILLOP: I agree. If there's no serious felony or violent felony found [true], then there's no point of finding a 667(a).
>
> "THE COURT: All right. Very well.
>
> "That's why I didn't send them back to have a decision made on that. In light of the fact there was a not guilty on count 1, there appeared to be no harm, no foul." (Italics added.)

In response to a motion to augment the record to include the verdict on the strike allegation, the court clerk responded that there were no other verdict forms than those already provided.

A criminal defendant has the statutory right to have a jury determine the truth of an allegation that he suffered a prior felony conviction. (§§ 1025, 1158; *People v. Wiley* (1995) 9 Cal.4th 580, 589; *People v. Vera* (1997) 15 Cal.4th 269, 274.) "The right to have a jury determine the truth of a prior conviction allegation does not flow from the jury trial provision of article I, section 16 of the California Constitution or the Sixth

8

Amendment of the United States Constitution. It is derived from statute. [Citation.]"
(*People v. Vera*, *supra*, at p. 277.)

Here, it can be inferred from the court's comments and the parties' conduct that the jury foreman filled out and signed the verdict form stating that the jury found the three strikes allegation true. Thus, the record refutes Broaden's contention that the jury did not find the three strikes allegation true.

However, we are dismayed that the verdict form on the three strikes allegation was lost and with the noncompliance with the procedures for receiving and recording a verdict, i.e., that the verdict was not read in open court, the jury was not asked to affirm the verdict, and the verdict was not recorded. These errors would have been easily correctible if either attorney had objected or the court had noticed that the proper procedures were not being followed. Fortunately, prior to receiving the verdict on the substantive offenses, the court here announced that the jury had arrived at a finding on the prior strike allegation and after the jury was discharged the court and the attorneys acknowledged on the record that a true finding on this allegation had been reached. Further, neither party raised an issue as to the validity of this finding.

### *The Romero Motion*

On January 3, 2013, Broaden filed a *Romero* motion asking the court to strike his prior strike conviction. In his moving papers Broaden argued that his more recent offenses were fairly trivial in that they involved Broaden kicking a correctional officer once in the knee area in a manner that did not injure the officer and a struggle with a second officer that lasted only a few seconds and also did not result in any injuries to the officer. Defense counsel also argued that Broaden was under considerable mental distress when he committed the underlying offenses.

At Broaden's sentencing hearing when the court took up the matter of Broaden's *Romero* motion, defense counsel noted that Broaden had "clearly expressed some mental

9

health concerns regarding suicidal thoughts" and submitted the matter on his moving papers.

After hearing the prosecutor's comments, the court reviewed Broaden's violent criminal history as detailed in his probation report and stated,

> "... Then we have the crime here where he was convicted after jury trial of trying to push one guard over the railing on the second floor of the prison.
>
> "There was another offense here where apparently a guard was kicked in the shin or something like that while they were trying to get him out of the cell or a cage. I'm not necessarily concerned with that, as much as the one trying to push the guard over the rail.
>
> "Had he gone over, [he] would have certainly been severely injured, if not killed.
>
> "The other one, kicking the guard in the leg, not nearly as egregious as the former.
>
> "Showed a propensity for violence over the course of his life and also while in prison. Doesn't seem to -- is making any progress working on that.
>
> "He is only 24 years old, but on the other hand at 24 he showed a great propensity for violence.
>
> "On the other hand there were no weapons used in the offenses. Mr. Broaden just used his body at that time.
>
> "But, nonetheless, it does appear to me that as discussed in the cases [*People v. *]*Williams*[ (1998) 17 Cal.4th 148] and *Romero*, in light of the nature of the circumstances of his present felonies and his serious -- and his prior serious or violent convictions, his background, he does not seem to fall outside the scheme.
>
> "Therefore, the Court will decline to use its discretion to dismiss the strike prior."

Broaden contends that in ruling on his *Romero* motion the court relied on facts that were rejected by the jury when it reasoned that Broaden had tried to kill Correctional

10

Officer Mercado. He further contends that the court overlooked substantial mitigating factors, i.e., that appellant had mental health issues, he was exhibiting some of these issues when he committed the instant offenses, and the instant offenses were neither serious nor violent felonies. Thus, according to Broaden, the court abused its discretion when it denied his *Romero* motion. We disagree.

In deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

The trial court's decision is "subject to review for abuse of discretion. This standard is deferential." (*People v. Williams*, *supra*, 17 Cal.4th p. 162.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

11

Broaden's probation report indicates that he was only 23 years old when he committed the underlying offenses in this matter and that despite his young age he already had a serious criminal record. As a juvenile Broaden was adjudicated of robbery and some type of grand theft offense in 2002. In 2003 he was adjudicated of assault with a deadly weapon or by means of force capable of producing great bodily injury and committed to the California Youth Authority from which he was paroled in 2008. As an adult, in 2010 Broaden was convicted by plea of assault with a deadly weapon and he admitted a great bodily injury enhancement. Broaden was serving a prison sentence on this last offense when he committed the underlying offenses in this matter.

Additionally, the court found that in committing the assault offense against Correctional Officer Mercado, Broaden attempted to push the officer over the guardrail and had he succeeded he would have severely injured or killed the officer. These circumstances support the court's denial of Broaden's *Romero* motion because, as stated by the court, Broaden had shown "a propensity for violence over the course of his life and also while in prison" and he had not made any progress in controlling his violent behavior.

Moreover, there is no merit to Broaden's contention that the court impermissibly considered facts that were rejected by the jury. "California law affords the trial court broad discretion to consider relevant evidence at sentencing. '[T]he court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to section 1203.3 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.' [Citation.] The trial court may consider any 'criteria reasonably related to the decision being made.' [Citation.] The court specifically is authorized to consider 'the record in the case.' [Citation.] Nothing in the applicable statute or rules suggests that a trial court must

12

ignore evidence related to the offense of which the defendant was convicted, merely because that evidence did not convince a jury that the defendant was guilty beyond a reasonable doubt of related offenses." (*People v. Towne* (2008) 44 Cal.4th 63, 85-86, fn. omitted, see also *In re Coley* (2012) 55 Cal.4th 524, 554 ["a jury verdict acquitting a defendant of a charged offense does *not* constitute a finding that the defendant is factually innocent of the offense or establish that any or all of the specific elements of the offense are not true"].) Thus, the jury's acquittal of Broaden on the attempted murder charge did not preclude the court from finding that Broaden attempted to force Correctional Officer Mercado over the rail during their struggle and from considering this fact in its decision denying Broaden's *Romero* motion.

Further, the record does not support Broaden's contention that the court overlooked his mental health issues in ruling on his motion. After an issue arose regarding Broaden's competency to stand trial, the court suspended criminal proceedings and eventually ordered Dr. Gary Longwith to perform a psychological evaluation of Broaden, which he performed on September 18, 2012. In his evaluation Dr. Longwith noted that Broaden reported attempting to commit suicide in February 2012. He also diagnosed Broaden with depression NOS and antisocial personality disorder but nevertheless opined that he was competent to stand trial. On October 2, 2012, the court relied on Dr. Longwith's report to find Broaden competent to stand trial and to reinstate criminal proceedings.[6] Additionally, the court was aware from the evidence presented at trial that Broaden's assault of Officer Mercado occurred while Broaden was suicidal and in the *Romero* motion's points and authorities and at Broaden's sentencing hearing

---

**6** Dr. Longwith also concluded that Broaden had the potential to be quite dangerous because of his mental health issues and because he met the criteria for antisocial personality disorder.

13

defense counsel argued this as a mitigating circumstance.  Thus, we conclude that the court did not abuse its discretion when it denied Broaden's *Romero* motion.

## **DISPOSITION**

The judgment is affirmed.