Filed 3/24/16  P. v. Cooper CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C076449 |
| v. | (Super. Ct. No. 13F03230) |
| ANTHONY L. COOPER, | |
| Defendant and Appellant. | |

When asked for his plea in a prison disciplinary hearing charging possession of marijuana in prison, defendant Anthony L. Cooper said "I take full responsibility.  I have it -- I did have it."  Later, in the instant criminal proceeding charging defendant with possession of marijuana in prison, defendant moved to suppress his prior statement in the disciplinary hearing, arguing the statement was inadmissible because he had not been given a *Miranda*[1] warning prior to the hearing.  The trial court denied the motion and a jury convicted defendant for possession of marijuana in prison.  The trial court found that defendant had a prior strike conviction and sentenced him to six years in prison.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

1

Defendant now contends (1) the trial court erred in denying his motion to suppress the statement because he had not been given a *Miranda* warning, (2) his Fifth Amendment rights were violated, and (3) the trial court erred in imposing a $50 laboratory fee and the abstract of judgment must be corrected to omit a $150 drug program fee. We will modify the judgment to strike the $50 laboratory fee, affirm the judgment as modified, and direct the trial court to amend and correct the abstract of judgment.

BACKGROUND

On the morning of January 8, 2013, Folsom State Prison Correctional Officer Carlos Sanchez and his partner were conducting random inmate searches as inmates entered a prison exercise yard. Sanchez randomly selected defendant for a search. During the patdown search, Sanchez noticed a bulged area by defendant's ankle above his shoe. The bulged area was a "bindle" that smelled strongly of marijuana.

The bindle was about the size of a golf ball, contained tobacco, and was wrapped in clear plastic cellophane. Sanchez immediately opened the bindle. Inside the tobacco he found two bindles of marijuana. Sanchez conducted a more thorough search of defendant in a holding cell but found no further contraband. Defendant's cell was also searched but no further contraband was found there either. Defendant submitted a urine sample which later tested positive for marijuana.

Lieutenant Salvador Quirarte subsequently conducted what is commonly referred to as a "115 hearing" with defendant. A 115 hearing is a disciplinary hearing; it is the prison's internal administrative adjudication of inmate infractions or rule violations. The only disciplinary charge pending against defendant was for possession of marijuana.

The day before the 115 hearing defendant was sent a "ducat," which Quirarte described as a permission slip, giving defendant notice that he had a 115 hearing the following morning in Quirarte's office. According to Quirarte's testimony, a disciplinary officer would have retrieved defendant from his cell and taken him to the hallway outside

2

Quirarte's office. That same disciplinary officer would also be responsible for giving defendant a *Miranda* warning, but the officer did not.

Defendant's 115 hearing took place in Quirarte's office, in the same building in which defendant was housed. Quirarte described his office as "probably 10 by 20, has a desk, a couple of chairs and a computer. Nothing fancy." The office has overhead lights and a couple of windows. The door is a manual door, locked with a key, and there is no dead bolt.

Defendant arrived at Quirarte's office by himself and without handcuffs. Quirarte could not recall whether the door was closed after defendant came in, but if it was, it was not locked. During a 115 hearing, Quirarte sometimes closed the door halfway for an inmate's privacy but he always left the door unlocked. The only two people present at the 115 hearing were Quirarte and defendant. Quirarte sat behind his desk; defendant sat in the chair in front of Quirarte's desk. The hearing was not recorded. Quirarte asked defendant if he wanted to proceed with the hearing; defendant "had no objections." Quirarte did not remember reading defendant the pending charge for possession of marijuana, but asked defendant if he understood the charge against him; defendant said that he did. Quirarte then asked defendant for his plea and defendant said, "I take full responsibility. I have it -- I did have it." Defendant remained unrestrained.

Quirarte found defendant guilty of possessing marijuana and assessed the following penalties against him: (1) 121 days of custody credit lost, (2) 90 days of visits lost, (3) 90 days of no-contact visits after visits are reinstated, and (4) 30 days of yard, canteen, phone and quarterly packages lost. Quirarte had the discretion to take as many as 180 days of custody credit away from defendant as a result of the rules violation, but because defendant exhibited a remorseful demeanor Quirarte took the lesser amount.

Quirarte described his own demeanor during the 115 hearing as "pretty neutral, matter of fact, accommodating." He did not raise his voice or pound on the desk. Quirarte advised defendant of his right to appeal and gave defendant options for how

3

to make the situation better for himself. Defendant then walked out of the office on his own.

The People subsequently charged defendant in a criminal proceeding with possession of marijuana while in custody (Pen. Code, § 4573.6)[2] and further alleged that defendant had a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12.) Defendant pleaded not guilty and the matter was set for jury trial.

Prior to trial, the People moved to introduce evidence of defendant's statement at the 115 hearing. Defendant moved to suppress his statement, arguing it was inadmissible because he was not given a *Miranda* warning prior to the 115 hearing. The trial court held an Evidence Code section 402 hearing to determine the statement's admissibility.

The sole witness at the 402 hearing was Lieutenant Quirarte. Among other things, Quirarte described generally his process for finding an inmate guilty of a rules violation. Prior to a 115 hearing, Quirarte is given a report regarding the charge or charges pending against an inmate. Quirarte does not "get too much into the report" until he is in the hearing, however, because he wants to make an "unbiased decision." During the hearing, he will refer to the report if an inmate has questions. If an inmate disagrees with the content of the report, and the inmate's point is valid, Quirarte will take that into consideration in determining guilt. If another person's name is mentioned, Quirarte will contact that person and ask them for their input. That person could be another officer, a staff member, a teacher, or another inmate. Quirarte will take that information into consideration as well.

In response to the trial court's questions, Quirarte testified that if defendant had objected to proceeding with the hearing, Quirarte would have inquired about the reason for the objection. If defendant's objection was relevant, Quirarte or prison officials

---

[2] Undesignated statutory references are to the Penal Code.

4

would "fix the problem." If there was no relevant objections to proceeding, Quirarte would have proceeded without defendant's input and advised him of his right to appeal. Quirarte also explained that defendant was free to get up and walk out at any time during the 115 hearing, though he never expressly said that to defendant. Had defendant walked out, Quirarte would have documented his absence, noted defendant was uncooperative, and found him guilty or not guilty based on the information he had.

By the time of defendant's 115 hearing, Folsom prison officials had already referred defendant's case to the Sacramento County District Attorney's Office. Nevertheless, at the time of the hearing, Quirarte did not know whether the People would prosecute the case.

Following argument, the trial court ruled defendant's statement admissible. The jury later convicted defendant for possession of marijuana in prison. (§ 4573.6.) The trial court found that defendant had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), denied his *Romero*[3] motion, and sentenced him to six years in state prison. The trial court imposed various fines and fees including a $50 laboratory fee pursuant to Health and Safety Code section 11372.5, but it declined to impose a $150 drug program fee.

DISCUSSION

I

Defendant contends the trial court erred in denying his motion to suppress the statement because he had not been given a *Miranda* warning before Quirarte began the 115 hearing.

"Before a suspect may be subjected to a custodial interrogation, he must be advised that he has the right to remain silent, that his statements can be used against him

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

and that he has a right to consult with or have an attorney present. (*Miranda v. Arizona*, *supra*, 384 U.S. at pp. 467-471 [16 L.Ed.2d at pp. 719-722].) In *Mathis v. United States* (1968) 391 U.S. 1, 4-5 [20 L.Ed.2d 381, 385] [(*Mathis*)], the federal high court extended these safeguards to prison inmates." (*People v. Fradiue* (2000) 80 Cal.App.4th 15, 19, fn. omitted (*Fradiue*).)

Defendant contends *Mathis* is controlling here and that subsequent decisions by the federal courts and this court are wrongly decided. This court, however, has already reviewed those later federal court decisions and recognized an "exception to *Mathis* where the interrogation is conducted under circumstances where no restraint is placed upon the inmate over and above that associated with his prisoner status." (*Fradiue, supra*, 80 Cal.App.4th at pp. 19, citing *Cervantes v. Walker* (9th Cir. 1978) 589 F.2d 424, 426-427 (*Cervantes*).)

As this court noted in *Fradiue*, an inmate obviously is not free to leave. (*Fradiue, supra*, 80 Cal.App.4th at p. 20.) "The question must therefore shift to whether some extra degree of restraint was imposed upon the inmate to force him to participate in the interrogation. Four factors are significant in this inquiry: (1) the language used to summon the inmate for questioning, (2) the physical surroundings of the interrogation, (3) the extent to which the inmate is confronted with evidence of his guilt, and (4) the additional pressure exerted to detain him." (*Ibid.*)

Defendant contends that even if *Fradiue* and *Cervantes* are "deemed persuasive," the exception to *Mathis* that was carved out in *Cervantes* was limited to the facts of *Cervantes* and the facts here are distinguishable. Specifically, he argues that, unlike the defendant in *Cervantes* who was participating in an investigation, he was participating in an administrative hearing. We do not read *Cervantes* or *Fradiue* that narrowly and find the analysis applicable here.

6

Defendant received a permission slip and notice of hearing the day before the hearing. The language used to summon defendant was neutral and not in the nature of a subpoena or an order to appear. (*Fradiue, supra*, 80 Cal.App.4th at p. 20.)

The physical surroundings of the 115 hearing also were neutral and no additional pressure was exerted to detain defendant. The hearing was conducted in Quirarte's office where there was a desk, windows, and chairs. Although a disciplinary officer retrieved defendant from his cell, defendant arrived at Quirarte's office on his own and unshackled. Defendant entered Quirarte's office and sat in a chair across from Quirarte's desk. The office door remained unlocked and defendant was unrestrained throughout the hearing. No one was present at the hearing other than Quirarte and defendant, and the hearing was not recorded. Quirarte asked defendant if he was prepared to proceed with the hearing; defendant had no objections. Defendant was free to leave the office at any time. Had defendant left, Quirarte would have completed the hearing in his absence. There was no extra degree of restraint forcing defendant to participate in the hearing. (*Fradiue, supra*, 80 Cal.App.4th at p. 20.)

During the hearing, Quirarte was "neutral, matter of fact, [and] accommodating." He asked defendant if he understood the charge against him and defendant indicated that he did. Quirarte then asked defendant for his plea and defendant pleaded guilty. Defendant was never "confronted with any evidence of his guilt." (*Fradiue, supra*, 80 Cal.App.4th at p. 21.) When the hearing was over, Quirarte gave defendant advice on making better choices and defendant left Quirarte's office on his own.

Based on the totality of these circumstances, we conclude that "no restraints were placed upon defendant to coerce him into participating in the interrogation over and above those normally associated with his inmate status. Hence, *Miranda* warnings were not required, and the trial court correctly rejected defendant's motion to suppress his confession." (*Fradiue, supra*, 80 Cal.App.4th at p. 21.)

II

Defendant also contends his Fifth Amendment right to remain silent was violated because he was forced to confess during the 115 hearing but was not given immunity from subsequent criminal prosecution. Defendant failed to raise this objection in the trial court. We will not consider defendant's claim for the first time on appeal. (*People v. Combs* (2004) 34 Cal.4th 821, 846.)

Anticipating his claim may be forfeited, defendant alternately argues trial counsel was ineffective for failing to raise the objection.

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Citation.]' [Citation.]" (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Here, trial counsel had no reason to object to defendant's admission of guilt as coerced because the confession, in fact, was not coerced. Defendant argues that because Quirarte would have taken the maximum number of custody credits away had he not pleaded guilty to the charges, his admission of guilt was coerced. Defendant relies upon the United States Supreme Court decision, *McKune v. Lile* (2002) 536 U.S. 24

8

[153 L.Ed.2d 47] (*McKune*), to support his argument. The circumstances of defendant's 115 hearing, however, were different than those experienced by the defendant in *McKune*.

In *McKune*, the defendant was a convicted sex offender who was scheduled for release in a few years when prison officials ordered him to participate in a sexual abuse treatment program. (*McKune, supra*, 563 U.S. at p. 30 (plur. opn. of Kennedy, J.).) The first step in that program was for the defendant to admit he committed the crime for which he was serving his sentence along with any other prior sex crimes for which he may or may not have previously been charged. (*Ibid.*) Defendant was told that if he refused to participate, his privilege status would be reduced from Level III to Level I, and he would be moved to a maximum security unit within the prison. (*Id.* at pp. 30-31.) The defendant refused to participate in the program "on the ground that the required disclosures of his criminal history would violate his Fifth Amendment privilege against self-incrimination." (*McKune,* at p. 31.) The United States Supreme Court held the defendant's Fifth Amendment privilege was not violated. (*McKune,* at p. 29 (plur. opn. of Kennedy, J.); *id.* at pp. 48-49 (conc. opn. of O'Connor, J.).)

Justice O'Connor's narrow concurrence in *McKune* represented the holding of the court. (*McKune, supra*, 563 U.S. at pp. 48-49 (conc. opn. of O'Connor, J.).) Justice O'Connor wrote that "[n]ot all pressure necessarily 'compels' incriminating statements." (*Id.* at p. 49.) Like the plurality, she "did not believe the alterations in respondent's prison conditions as a result of his failure to participate in the Sexual Abuse Treatment Program . . . were so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against self-incrimination." (*McKune,* at pp. 48-49.) But Justice O'Connor believed the plurality opinion went too far and that a penalty for refusing to incriminate oneself that resulted in longer incarceration or execution "would surely implicate a 'liberty interest.' " (*Id.* at p. 52.) Plea bargains, however, which generally include a promise for a reduced penalty if a defendant were to admit his or her guilt, do

9

not violate the Fifth Amendment. (*Brady v. United States* (1970) 397 U.S. 742, 751 [25 L.Ed.2d 747, 758].)

Here, defendant was subject to a disciplinary hearing in prison. He was advised of the charges and then asked whether he pleaded guilty or not guilty. With no further discussion, defendant admitted his guilt. Defendant was never told that if he refused to admit his guilt Quirarte would take away the maximum number of custody credits, thereby increasing his time in prison. Had defendant not admitted his guilt, either by remaining silent or affirmatively denying his guilt, Quirarte would still be required to find him guilty before he could impose any consequences.

Unlike the defendant in *McKune* who was told he had to admit his guilt or he would be moved and his privileges reduced, defendant here confronted the same choice any defendant confronts in a plea situation. Defendant received a reduced penalty after admitting his guilt because his demeanor appeared remorseful. His admission was not coerced. (See *Brady v. United States, supra*, 397 U.S. at p. 751 [25 L.Ed.2d at p. 758].)

Defendant argues that the "degree of coercion involved [was] further aggravated by the fact that [he] was faced with this choice without being informed that criminal proceedings were underway." But he cites no authority to support that proposition.

We conclude defendant's claim of ineffective assistance lacks merit.

III

Defendant contends, and the People agree, that the $50 laboratory fee imposed by the trial court pursuant to Health and Safety Code section 11372.5 should be stricken.

Health and Safety Code section 11372.5 requires trial courts to impose a $50 laboratory fee if a defendant is convicted of violating one of the statutes enumerated in Health and Safety Code section 11372.5, subdivision (a). Defendant was convicted of violating Penal Code section 4573.6, which is not one of the enumerated statutes. Accordingly, we will modify the judgment to strike the $50 laboratory fee. (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1415 [an unauthorized sentence may be

10

corrected by an appellate court even in the absence of an objection or argument in the trial court].)

Defendant further contends, and again the People agree, that the abstract of judgment must be corrected to omit a $150 drug program fee because the trial court specifically said on the record that it was not imposing the drug program fee. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385; accord, *People v. Mesa* (1975) 14 Cal.3d 466, 471.) We will order the abstract of judgment corrected to accurately reflect the court's oral pronouncement not to impose the $150 drug program fee.

DISPOSITION

The judgment is modified to strike the $50 laboratory fee and the judgment is affirmed as modified. The trial court is directed to amend and correct the abstract of judgment to reflect the judgment as modified and the trial court's oral pronouncement not to impose the $150 drug program fee. The trial court shall forward a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.

      /S/              
Mauro, J.

We concur:


     /S/           
Nicholson, Acting P. J.


     /S/           
Robie, J.

11