**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Louis REID, Defendant-Appellant.**

**No. 18205.**

United States Court of Appeals, Seventh Circuit.

Jan. 25, 1971.

Stephen A. Schiller, University of Illinois, Chicago, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Jeffrey F. Arbetman, Asst. U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and STEVENS, Circuit Judge.

PER CURIAM.

Defendant appeals from his second conviction after his third trial on a charge of assaulting a federal correctional officer. 18 U.S.C. §§ 1114, 111.[1] On this appeal he complains of the use of a statement made to F.B.I. agents three days after the incident. We are satisfied that the statement was properly received.

Defendant has been incarcerated in the Federal Penitentiary at Marion, Illinois, since prior to January 27, 1967. At about 9:30 P.M. on that date, as the result of an earlier prison altercation, he was placed in solitary confinement. It was while he was being escorted to the segregation cell that the assault in question occurred. In the afternoon of Jan-

---

[1] In the first trial the jury was unable to reach a verdict; the second resulted in a conviction which was reversed on appeal. See United States v. Reid, 410 F.2d 1223 (7th Cir. 1969).

uary 30, 1967, two F.B.I. agents visited the prison to investigate the incident. Defendant, who had been in a segregation cell for almost 66 hours, was brought to the prison office where the interview was conducted. The interview lasted for about 30 to 45 minutes. Defendant was then returned to the segregation cell.[2]

Defendant first contends that the F.B.I. agents did not adequately inform him of his constitutional rights. The district court held a pre-trial hearing on the admissibility of his statement. Resolving certain credibility issues against the defendant, the court found that he had knowingly and intelligently executed a waiver of his rights and had made the statement voluntarily. The court's findings are supported by the record.[3]

■ Defendant next argues that under Rule 5 of the Federal Rules of Criminal Procedure he was entitled to be advised of his rights by a judicial officer prior to questioning by the agents. The Rule 5 requirement that a person in custody be taken before a commissioner "without unnecessary delay" arises at the time of arrest.[4] Defendant was not arrested on the assault charge until almost two months after his interview by the F.B.I. agents. Prior thereto he was in custody pursuant to an unrelated valid conviction.[5] Rule 5 does not apply.

■ Finally, relying on Westover v. United States, 384 U.S. 436, 494–497, 86 S.Ct. 1602, 16 L.Ed.2d 694, defendant argues that the advice he received from the F.B.I. agents, though perhaps adequate in other circumstances, was insufficient in the custodial circumstances of this case. He stresses both the fact of his prolonged imprisonment and the period of solitary confinement immediately preceding his questioning.

In *Westover*, the Supreme Court regarded the F.B.I. interrogation as a mere continuation of a 14-hour period of questioning by local police, which had not been preceded by any warnings or advice whatsoever. In substance, the Court held that advice given toward the end of a prolonged interrogation could not save an otherwise inadmissible confession. In this case, however, defendant was advised of his rights before any questions were asked. There is no claim that the interview by the F.B.I. agents was merely a continuation of prolonged interrogation by others. Neither the incarceration in prison, nor the solitary confinement, resulted from the assault under investigation, or was shown to have affected defendant's questioning by the F.B.I. agents. We do not understand *Westover* to lay down a rule which would foreclose questioning of a prison inmate for the purpose of determining whether and by whom an offense may have been committed.

The judgment is affirmed.

2. There has been no suggestion that the period of solitary confinement was affected in any way by the alleged crime or by petitioner's conduct during questioning by the agents.

3. One of the agents testified that he advised the defendant orally of his right to counsel and his right to remain silent; that defendant read the waiver of rights form; and that he indicated understanding of the form and signed it. Defendant, on direct examination, repeatedly and categorically denied signing the waiver; on cross-examination he first said he did not recall signing, then acknowledged that it was possible he had signed. When the court asked him to compare his signature on a communication to the court with the signature on the waiver form, defendant acknowledged that it "does look like my signature."

4. "An officer making an arrest * * * shall take the arrested person without unnecessary delay before the nearest available commissioner. * * * " Fed.R.Crim. P. 5(a). See Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968), cert. denied Roots v. United States, 393 U.S. 1067, 89 S.Ct. 722, 21 L.Ed.2d 710.

5. He described the offense as "auto theft"; since he was in a federal penitentiary, presumably it was a violation of 18 U.S.C. § 2312.