**Enrique Ortiz CERVANTES, Petitioner-Appellant,**

v.

**Bill WALKER, Superintendent, Banning Road Camp, Respondent-Appellee.**

**No. 77–3372.**

United States Court of Appeals, Ninth Circuit.

Nov. 8, 1978.

Rehearing and Rehearing En Banc Denied Jan. 26, 1979.

J. Blaine Anderson, Circuit Judge, dissented with an opinion.

Stephen J. Perrello, Jr. (argued), San Diego, Cal., for petitioner-appellant.

Karl J. Phaler, Deputy Atty. Gen. (argued), San Diego, Cal., Evelle J. Younger, Atty. Gen., Sacramento, Cal., for respondent-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and INGRAM,* District Judge.

* Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

1. Cervantes has exhausted his state remedies. He raised both issues before the California Court of Appeal, which rendered an unpublished disposition unanimously affirming the trial court's judgment. His petition for rehearing to the court of appeal and his petition for hearing to the California Supreme Court were denied.

We also find Cervantes to have been in custody at the time he filed his petition. Probation provisions of California law render probation "custody" for the purpose of the petition. *Benson v. California*, 328 F.2d 159, 162 (9th Cir.

WALLACE, Circuit Judge:

■ Cervantes appeals from the dismissal of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (1976). The state trial court had admitted into evidence a statement he made to prison staff members which identified a substance in his possession as marijuana. He was convicted of possession of narcotics in a county jail, a felony under California law. Execution of the sentence was suspended and a three-year period of probation was imposed. As a condition of probation, Cervantes was to submit to a search of his person and property at any time without notice. Cervantes' petition challenges the search conditions of his probation as unconstitutional, and the admission of his statement at trial as violative of his privilege against self-incrimination. We find the first question moot and affirm on the remaining question.[1]

I

■ Cervantes' three-year probationary period expired shortly before oral argument and, therefore, his challenge to the probation conditions is moot. Although Cervantes was in a road camp on new charges at the time he filed the petition, the record does not establish any connection between this confinement and the probation conditions. There is no indication that Cervantes or his belongings were ever subjected to a search pursuant to the probation conditions. We have found no collateral consequences which could ensue from such expired conditions, nor were any identified by Cervantes.

1964), *cert. denied*, 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970 (1965).

In naming Bill Walker, Superintendent, Banning Road Camp, Cervantes has apparently named the wrong party as defendant because he does not challenge the Banning Camp confinement. We will assume for the sake of argument that the correct state authority has been named. *Cf. Huante v. Craven*, 500 F.2d 1004, 1005 n. 1 (9th Cir. 1974) (per curiam) (in habeas corpus proceeding where remand to correctly name the proper state authority as party defendant seemed fruitless, court would assume arguendo that correct defendant had been named).

Nor do we believe the mootness barrier is overcome by designating the questioned probation condition as one " 'capable of repetition, yet evading review', " *see Sosna v. Iowa*, 419 U.S. 393, 399–400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975). In *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), Bradford contended that, under the Fourteenth Amendment, he was entitled to certain procedural rights in the determination of his parole eligibility. While the case was pending before the Supreme Court, mootness was suggested because he was already paroled. In rejecting the " 'capable of repetition, yet evading review' " doctrine, the Court said *Sosna* had limited the applicability of the doctrine "to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 149, 96 S.Ct. at 349. Based upon the record before us, we find that Cervantes qualifies under neither. The three-year period of probation was not demonstrated to be too short to fully litigate the issue, and there is no indication that Cervantes will receive the same probation condition in the future.

Similarly, the record does not show that the three-year period of the conditions leaves Cervantes "utterly remediless and defenseless against repetitions of unconstitutional conduct," *Sibron v. New York*, 392 U.S. 40, 53, 88 S.Ct. 1889, 1897, 20 L.Ed.2d 917 (1968). The record does show that six months elapsed between the denial of Cervantes' petition for hearing by the California Supreme Court and the filing of the petition for a writ of habeas corpus in the district court. The record does not reveal the reason for the delay, nor any basis upon which we could conclude that resolution of the challenge before expiration of the probationary period was impossible.

Therefore, we do not reach the question of the constitutional validity of the search conditions. *Cf., e. g., Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (prisoners' challenge to conditions of confinement moot since confinement had ended); *Nunes v. Nelson*, 467 F.2d 1380, 1381 (9th Cir. 1972) (per curiam) (because appellant was not in custody, issue of alleged illegal conditions of imprisonment was not justiciable); *Justin v. Jacobs*, 145 U.S.App.D.C. 355, 358, 449 F.2d 1017, 1020 (1971) (since confinement in hospital had ended, claim of inadequate medical treatment was moot).

## II

Cervantes' second claim, however, is not moot. He asserts that his incriminating statement used at trial was not preceded by the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and hence was improperly admitted into evidence. We disagree. The circumstances of the questioning did not require *Miranda* warnings.

The facts are stated in the California Court of Appeal's disposition of the case [2] and supplemented by statements appearing in Cervantes' habeas corpus petition.[3] Cervantes was incarcerated in the Imperial County jail. In response to Cervantes' recent involvement in a fight with another inmate, Sheriff's Deputy Jopes moved Cervantes from one jail cell to another. Jopes directed Cervantes to get his belongings and then took him to the jail library so the shift commander, Sergeant Ingle, could talk with him before the move. Cervantes left his belongings on a table outside the library door and entered the library. Jopes then searched the belongings in accordance with

2. The record on appeal includes no state trial court findings or transcript. Cervantes has not, however, disputed the recitation of facts by the court of appeal, but only the inferences drawn by the court "because of its misapplication of the law." The district court's apparent reliance on the undisputed facts in the court of appeal opinion was proper. *See Linden v. Dickson*, 287 F.2d 55, 58 (9th Cir. 1961).

3. Because the district court dismissed the petition without a hearing, we will take these allegations as true. *See Massey v. Moore*, 348 U.S. 105, 106–08, 75 S.Ct. 145, 99 L.Ed. 135 (1954).

standard jail procedure when moving inmates. He found a small matchbox containing a green odorless substance.

The deputy testified that he suspected the substance was marijuana. He did not definitely know, however, as he had no specific training in identifying marijuana. Jopes took the matchbox and contents into the library in order to have Cervantes identify the substance. The library dimensions were about six feet by four feet. In the presence of Ingle, and at a distance of about one and one-half feet to two feet from Cervantes, Jopes opened the matchbox, showed the contents to Cervantes and asked, "What's this?" Cervantes replied, "That's grass, man." Jopes then placed Cervantes under arrest. The matchbox contained a usable quantity of marijuana.

Cervantes' appeal presents the question whether Jopes' questioning constituted custodial interrogation requiring him to provide *Miranda* warnings. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted).

In contrast to custodial interrogation, on-the-scene questioning does not require *Miranda* warnings. *Id.* at 477–78, 86 S.Ct. 1602. Such questioning enables an officer "to determine whether a crime has been committed or is in progress." *Lowe v. United States,* 407 F.2d 1391, 1393–94 (9th Cir. 1969).

The question in this case is unique because Cervantes was residing in jail when the questioning occurred. Cervantes relies on *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), for the proposition that any interrogation during prison confinement constitutes custodial interrogation requiring *Miranda* warnings. We do not read *Mathis* so broadly. In

*Mathis,* the prisoner was questioned by a government agent about certain tax returns. The government argued that for *Miranda* to apply, one must be in custody for the matter to which the questioning relates. The Court rejected this contention and held that Mathis was entitled to *Miranda* warnings. *Id.* at 4–5, 88 S.Ct. 1503.

To interpret *Mathis* as Cervantes urges would, in effect, create a per se rule that any investigatory questioning inside a prison requires *Miranda* warnings. Such a rule could totally disrupt prison administration. *Miranda* certainly does not dictate such a consequence. "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda v. Arizona, supra,* 384 U.S. at 477, 86 S.Ct. at 1629.

Adoption of Cervantes' contention would not only be inconsistent with *Miranda* but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart. We cannot believe the Supreme Court intended such a result. Thus, while *Mathis* may have narrowed the range of possible situations in which on-the-scene questioning may take place in a prison, we find in *Mathis* no express intent to eliminate such questioning entirely merely by virtue of the interviewee's prisoner status.[4]

Cervantes next contends that the circumstances of his questioning fulfilled the test for custodial interrogation established by our court. We have found custodial interrogation to have occurred if a reasonable person would have believed he could not leave freely. *United States v. Kennedy,* 573 F.2d 657, 660 (9th Cir. 1978); *Lowe v. United States, supra,* 407 F.2d at 1397. Under this standard we have considered "the

---

4. The District of Columbia Circuit has concluded that *Mathis* does not require warnings in an instance of what it characterized as the "functional equivalent" of on-the-scene questioning, where an officer questioned a prisoner partici-

pating in a lineup as "a possible witness or source of information." *United States v. Wiggins,* 166 U.S.App.D.C. 121, 126, 509 F.2d 454, 459–60 (1975).

language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and pressure exerted to detain him." *United States v. Curtis,* 568 F.2d 643, 646 (9th Cir. 1978) (quoting *United States v. Luther,* 521 F.2d 408, 410 (9th Cir. 1975) (per curiam)).

When prison questioning is at issue, however, this "free to leave" standard ceases to be a useful tool in determining the necessity of *Miranda* warnings. It would lead to the conclusion that all prison questioning is custodial because a reasonable prisoner would always believe he could not leave the prison freely. Once more, we cannot reconcile such a result with the limitations set forth in *Miranda.*[5]

Rather, the language of *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam), provides the starting point for our analysis. Mathiason voluntarily went to the state patrol office at the request of an officer. There, although advised he was not under arrest, the officer informed Mathiason that he was a burglary suspect and falsely stated that his fingerprints had been found at the scene. Mathiason confessed. Nonetheless, he was not then arrested and he left the office after the questioning. Rejecting the "coercive environment" standard employed by the Supreme Court of Oregon, the Court held there had been no custody within the meaning of *Miranda* because there was "no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way." *Id.* at 495, 97 S.Ct. at 714.

■ The concept of "restriction" is significant in the prison setting, for it implies the need for a showing that the officers have in some way acted upon the defendant so as to have "deprived [him] of his freedom of action in any significant way," *Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct.

at 1612 (footnote omitted). In the prison situation, this necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement. Thus, restriction is a relative concept, one not determined exclusively by lack of freedom to leave. Rather, we look to some act which places further limitations on the prisoner.

■ In defining this concept we adhere to the objective, reasonable person standard and the same four factors we have employed under the "free to leave" test. *See United States v. Curtis, supra,* 568 F.2d at 646. Therefore, the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him must be considered to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting. Such a situation requires *Miranda* warnings.

This approach best reconciles *Mathis* with the principles of *Miranda.* The questioning of Mathis by a government agent, not himself a member of the prison staff, on a matter not under investigation within the prison itself may be said to have constituted an additional imposition on his limited freedom of movement, thus requiring *Miranda* warnings. Also distinguishable on this basis are *United States v. Cassell,* 452 F.2d 533, 540–41 (7th Cir. 1971); *Wade v. Mancusi,* 358 F.Supp. 103, 104 (W.D.N.Y.1973), and *United States v. Harrison,* 265 F.Supp. 660, 662 (S.D.N.Y.1967). At the same time, *Mathis,* so interpreted, does not bar all instances of the on-the-scene questioning so carefully excluded from the *Miranda* requirements. *See Miranda v. Arizona, supra,* 384 U.S. at 477–78, 86 S.Ct. 1602.

---

5. We have previously recognized that not all instances of prison questioning fall within the protections of *Miranda.* We have held that where an arrestee receives *Miranda* warnings and indicates he wants an attorney, an incriminating statement made in response to a subse- quent question in the course of a routine inventory of his personal possessions violates neither the right to counsel nor the privilege against self-incrimination. *United States v. La Monica,* 472 F.2d 580, 581 (9th Cir. 1972).

While not specifically articulating the added imposition on freedom of movement inquiry, the district judge did apply a similar test. We conclude he came to a proper result. We agree that Jopes' questioning was not an instance of custodial interrogation. The marijuana was uncovered in the course of a routine search. Jopes' question sought to ascertain the nature of the substance. The questioning took place in the prison library and appears to have been a spontaneous reaction to the discovery. Under these circumstances, we also conclude that neither the prison setting nor the presence of Jopes and Ingle exerted a pressure to detain sufficient to have caused a reasonable person to believe his freedom of movement had been further diminished. Rather, this was an instance of on-the-scene questioning enabling Jopes to determine whether a crime was in progress. *See United States v. Edwards,* 444 F.2d 122, 123 (9th Cir. 1971) (per curiam); *Klamert v. Cupp,* 437 F.2d 1153, 1154 n. 1 (9th Cir. 1970). Accordingly, no *Miranda* warnings were required and Cervantes' statement was properly admitted at trial.[6]

AFFIRMED.

J. BLAINE ANDERSON, Circuit Judge, dissenting:

With the firm belief that the distinctions sought to be drawn by the majority are of no substance, I respectfully dissent. Even though in the prison setting everything done by the prison officers gives rise to an inescapable feeling that Cervantes knew, and any reasonable prisoner in a like situation would know, that his change of cells and being taken to the prison library for interview (interrogation), was a change in his custodial situation. When the officer entered the library with the match box for the purpose of asking Cervantes about it, the accusatory stage was reached. The new test constructed by the majority is, in my view, unrealistic and unworkable. Even if this new test should prove to be valid, the facts here bring Cervantes within the "additional imposition on his limited freedom of movement" and *Miranda* warnings were required.

In *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the government sought to distinguish the application of *Miranda* in the prison setting by urging that it was merely a routine tax investigation and that Mathis was not put in jail by the officers questioning him. Mr. Justice Black, speaking for the majority, declared:

"These differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." 391 U.S. at 4, 88 S.Ct. at 1504.

So too are the distinctions sought to be drawn in this case by the majority opinion. I would reverse with directions to grant the writ.

---

**6.** This case does not present an instance of questioning about prison crime which does not immediately follow its discovery. *Cf. United States v. Reid,* 437 F.2d 1166, 1166–67 (7th Cir. 1971) (per curiam) (*Miranda* warnings given prisoner in prison interview by FBI pertaining to assault on officer and prisoner's subsequent waiver held sufficient); *Blyden v. Hogan,* 320 F.Supp. 513, 518–20 (S.D.N.Y.1970) (*Miranda* warnings required before inmates signed consent to be interviewed without counsel with regard to prison riots). We express no view on the applicability of *Miranda* in such circumstances.

In *Jett v. Castaneda,* 578 F.2d 842 (9th Cir. 1978), we implied that *Miranda* warnings are required prior to a "custodial interrogation" relating to prison crime. The facts of *Castaneda,* however, do not reveal the exact nature of the custodial setting and *Castaneda* is not contrary to our opinion here.