NOT DESIGNATED FOR PUBLICATION

No. 115,347

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CORY A. LITTLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Russell District Court; MIKE KEELEY, judge. Opinion filed December 16, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Daniel W. Krug*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*: Corey A. Little contends his conviction for traffic in contraband into a correction facility must be overturned because he had not been given the *Miranda* warning prior to his admission that he hid some chewing tobacco in one of the jail's toilets. We conclude that the jailer was not required to caution Little prior to asking him about the tobacco.

Further, the record clearly shows Little was warned that he could not bring his chewing tobacco into the Russell County jail.

1

We affirm his conviction.

Little was serving weekends in the Russell County jail as part of his sentence in an unrelated case. Deputy Karl Houck, the jail supervisor, received a call from an unknown Barton County officer who said he had information that Little was smuggling contraband into the jail. Then on February 27, 2015, Little reported to the jail to serve his time. Houck placed Little in a holding cell in the booking room until he could be booked into the jail. Houck advised Little that he had information that Little might be carrying contraband. Houck testified that the conversation was as follows:

"Q.     What was your contact with Mr. Little at that time initially?
"A.     I had asked Mr. Little if he had any contraband on him or in him.
"Q.     And his response?
"A.     He said no.
"Q.     Okay. What did you do then?
"A.     I advised him that if he had anything it could be considered contraband, and it would be a felony. He denied having anything. I –
"Q.     And what was your response then?
"A.     Well, I'd asked him if he would sign a consent for a doctor to check him for contraband.
"Q.     And what happened then?
        . . . .
"A.     And he advised that he could just get rid of it right now.
        . . . .
"A.     I believe that he said he could go to the bathroom and get rid of it."

Deputy Houck checked the bathroom and determined it was clear. He disconnected the water flush valve so Little could not flush anything. Houck got Little out of the holding cell and Little went into the bathroom. After Little was finished, Houck placed Little back into the holding cell. Houck went into the bathroom and retrieved a

package of chewing tobacco, wrapped in cellophane and black electrician's tape, from the toilet. Little hid it in a cavity of his body.

Little was charged with traffic in contraband into a correctional facility, a felony. Little filed a motion to suppress his statements and the contraband evidence because he was not advised of his *Miranda* rights. Little also filed a motion to dismiss, contending the evidence presented at the preliminary hearing was insufficient to show that he had notice of what constituted contraband.

The district court denied the motions. With regard to the motion to suppress, the court found that the deputy was permitted to ask Little if he had any contraband without giving a *Miranda* warning:

> "The reason is this is something allowable to make sure the person is not bringing in any type of illegal contraband or other property into the jail. The correctional officer has a duty and obligation to make it safe for the jail and other prisoners and this question is within the province of an officer. When the defendant denied this, the officer pointed out he had some information and the defendant voluntarily, without any type of search or seizure, proceeded to divulge he had tobacco in a body cavity and he personally removed it. Defendant did this voluntarily and was not unduly pressured or coerced to provide this information."

The court found the questioning was for the safety of the other inmates and did not violate *Miranda*.

With regard to the motion to dismiss, the court found that there were adequate warnings posted throughout the jail as to what constituted contraband. Also, Little had previously been in the jail and seemed to be aware that tobacco was contraband because he attempted to hide it in a cavity of his body. The court found there was sufficient evidence that a felony had been committed.

3

A bench trial was held on stipulated facts. Defense counsel noted that Little intended to appeal the denial of the motions. The court found Little guilty of traffic in contraband into a correctional facility. The court sentenced Little to 36 months in prison and 24 months of postrelease supervision. Little timely appeals.

*Deputy Houck's questioning of Little did not constitute custodial interrogation.*

Little contends that the district court erred by not suppressing the statements he made to Deputy Houck and the evidence obtained as a result of the statements. Little contends the deputy interrogated him about a suspected crime while he was in custody in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Appellate courts review a trial court's determination whether an interrogation was custodial employing two distinct inquiries. First, the appellate court reviews the district court's factual findings as to the circumstances surrounding the interrogation for substantial competent evidence. The appellate court does not reweigh evidence, assess the credibility of the witnesses, or resolve conflicting evidence. Second, the appellate court reviews de novo whether, under all of the circumstances, a reasonable person would have felt free to terminate the interrogation and disengage from the encounter. *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014).

We hold the district court's factual findings were supported by substantial competent evidence. The district court found that Deputy Houck was made aware of the possibility that Little was smuggling contraband into the jail through a telephone conversation with the Barton County Sheriff's Office. Deputy Houck asked Little if he had any contraband. Little initially denied it. The deputy pointed out he had information that Little was carrying contraband. Little then divulged he wanted to dispose of it. Little personally removed the tobacco. Deputy Houck's testimony was uncontroverted.

4

Next, the court has unlimited review over whether, under all of the circumstances, a reasonable person would have felt free to terminate the interrogation and disengage from the encounter. *Lewis*, 299 Kan. at 835. Here, all parties agree that Little was not free to leave the jail. But that does not necessarily mean he did not feel free to terminate the interrogation and disengage from the encounter. Little was in "custody" in the traditional sense of the word. But he was not clearly in custody for purposes of *Miranda*. Little had just self-reported to serve his weekend jail sentence for an unrelated matter. Upon entering the jail, he was placed into the booking cell. He was asked if he had any contraband on him, as are all inmates when they enter the jail.

*Imprisonment is not, without more, Miranda custody.*

In *Mathis v. United States*, 391 U.S. 1, 88 S. Ct. 1503, 20 L. Ed. 2d 381 (1968), the United States Supreme Court applied *Miranda* to the questioning of an inmate by federal tax investigators, when the inmate was in prison on a state law matter:

> "The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights. We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody. In speaking of 'custody' the language of the *Miranda* opinion is clear and unequivocal:
>
> 'To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.' [Citation omitted.]" 391 U.S. at 4-5.

5

Despite that "clear and unequivocal" language, courts continued to struggle with the meaning of "custodial interrogation" in a prison setting after the *Mathis* decision. In *Cervantes v. Walker*, 589 F.2d 424, 429 (9th Cir. 1978), the Ninth Circuit held that the questioning of an inmate in the prison library after marijuana was discovered during a routine search did not constitute custodial interrogation. Rather, the questioning constituted on-the-scene questioning to determine whether a crime was in progress. 589 F.2d at 429. The defendant argued that any interrogation during prison confinement constituted custodial interrogation. 589 F.2d at 427. The court rejected that view:

> "To interpret *Mathis* as Cervantes urges would, in effect, create a per se rule that any investigatory questioning inside a prison requires *Miranda* warnings. Such a rule could totally disrupt prison administration. *Miranda* certainly does not dictate such a consequence. 'Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.' *Miranda v. Arizona*, supra, 384 U.S. at 477, 86 S. Ct. at 1629.

> "Adoption of Cervantes' contention would not only be inconsistent with Miranda but would torture it to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart." 589 F.2d at 427.

The court held that for *Miranda* to apply in a prison setting, there must be "a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." 589 F.2d at 428.

In *State v. Benoit*, 21 Kan. App. 2d 184, 898 P.2d 653 (1995), this court agreed with the Ninth Circuit:

> "To create a custodial interrogation of an inmate in a prison setting, some change in the inmate's surroundings that results in an added imposition or restriction on the

6

inmate's freedom of movement should occur. To apply the test to determine if an inmate's freedom of movement has been restricted, a court must consider the totality of the circumstances surrounding the alleged interrogation." 21 Kan. App. 2d 185, Syl. ¶ 8.

Benoit was serving a sentence in a minimum security "boot camp." One night, a correctional officer saw Benoit bent down at the back door putting his ID badge between the lock and door facing. The correctional officer notified two other correctional officers. Officer Qualls saw Benoit's hand on the door knob. When Qualls saw Benoit crawling toward him, the officer asked Benoit to stand up. Qualls asked Benoit what he was doing. Benoit initially said he was doing nothing. Qualls told Benoit that he and the other correctional officers had seen him. Then Benoit admitted he was trying to jimmy the door open to leave. Benoit was transported to the Labette County jail. Two days later, Walter Whorten, the jail administrator, asked Benoit if he had attempted to escape. Benoit answered affirmatively. Benoit was convicted of attempted aggravated escape.

On appeal, Benoit contended that his statements should have been excluded under *Miranda*. This court concluded that Qualls' questioning of Benoit was on-the-scene questioning, not custodial interrogation. The questioning occurred at the scene, the surroundings were familiar to Benoit, and the questioning was very brief. However, Whorten's questioning of Benoit was custodial interrogation. Whorten's questioning occurred 2 days after the incident, the questioning was after Benoit had been removed from his familiar surroundings to the jail where his freedom of movement was greatly restricted, and the investigation was already underway. 21 Kan. App. 2d at 196.

More recently, in *Howes v. Fields*, 565 U.S. 499, 506-07, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012), the United States Supreme Court revisited the issue. The Court rejected a categorical rule that a prisoner is in custody for purposes of *Miranda*. The Court stated that *Mathis* simply held, as relevant here, that a prisoner who otherwise meets the requirements for *Miranda* custody is not taken outside the scope of *Miranda* because the

7

prisoner was incarcerated for an unrelated offense. "*Mathis* did not hold that imprisonment, in and of itself, is enough to constitute *Miranda* custody." 565 U.S. at 507. The Court concluded that "service of a term of imprisonment, without more, is not enough to constitute *Miranda* custody." 565 U.S. at 512.

The *Fields* Court explained that *Miranda* adopted a "set of prophylactic measures" to protect against the "inherently compelling pressures" of custodial interrogation.

"[B]ut *Miranda* did not hold that such pressures are always present when a prisoner is taken aside and questioned about events outside the prison walls. Indeed, *Miranda* did not even establish that police questioning of a suspect at the station house is always custodial. See *Mathiason v. Oregon*, [429 U.S. 492, 495, 975 S. Ct. 711, 50 L. Ed. 2d 714 (1977)] (declining to find that *Miranda* warnings are required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect')." 565 U.S. at 507-08.

"'[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." 565 U.S. at 508-09. The first step in the analysis is to determine whether, in light of the objective circumstances, a reasonable person would have felt free to terminate the interrogation and leave. Relevant factors include the location of the questioning, its duration, statements made during the questioning, the presence or absence of physical restraints during the questioning, and the release of the person at the end of the interrogation. 565 U.S. at 509.

The Court explained:

"Not all restraints on freedom of movement amount to custody for purposes of *Miranda*. We have . . . instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." 565 U.S. at 509.

8

The Court gave three reasons. First, questioning a person who is already in prison does not necessarily involve the same shock as when a person is arrested and whisked away to a police station for questioning. In the latter scenario, detention is a "sharp and ominous change" that may give rise to coercive pressure. Second, a prisoner already serving a sentence would not be pressured to speak in the hope of immediate release upon answering the questions. Third, a prisoner, unlike a person who has not been convicted and sentenced, knows that the questioning officer probably lacks authority to change the duration of the prisoner's sentence. 565 U.S. at 511-12.

In *Fields*, the inmate was escorted to a conference room and questioned by two deputies about allegations that before he was incarcerated, he had engaged in sexual conduct with a 12-year-old boy. 565 U.S. at 502. The inmate did not invite the interview or consent to it, and he was not advised that he could decline to speak with the deputies. The interview lasted 5-7 hours and continued well after bedtime. The deputies were armed, and one of the deputies used a "very sharp tone." But the inmate was told at the beginning of the questioning, and reminded thereafter, that he could leave and go back to his cell whenever he wanted. He was not physically restrained or threatened, he was escorted to a well-lit conference room, he was not uncomfortable, he was offered food and water, and the door to the room was sometimes left open. Under these circumstances, the prisoner was not in custody within the meaning of *Miranda*. 565 U.S. at 514-15.

*We hold that Little was not in* Miranda *custody.*

Several factors support the conclusion that Little *was not* in *Miranda* custody. Little was subjected merely to routine questions during the booking process. He entered the jail and was asked if he had contraband on him. Houck testified that all inmates who come through the door are asked the same question. The *Fields* Court explained that an inmate is not in *Miranda* custody because routine security precautions are taken. See 565 U.S. at 513. Asking an incoming inmate if he or she is carrying contraband is a

9

reasonable routine security question. And, the routine nature of the question is not an added imposition or restriction on the inmate. See *Benoit*, 21 Kan. App. 2d 185, Syl. ¶ 8.

The questioning took place in the booking room shortly after Little entered the jail. The place and the nature of the questioning suggests that it was on-the-scene questioning to see if a crime was in progress, rather than custodial interrogation. See *Miranda*, 384 U.S. at 477; *Benoit*, 21 Kan. App. 2d at 196. The questioning was quite brief. The deputy testified that he asked Little two questions. The questioning took place in familiar surroundings. Little had been booked into the jail many times. See *Benoit*, 21 Kan. App. 2d at 196. He was not moved to different surroundings. Little voluntarily checked himself into the jail.

The record does not indicate that more than one deputy was present during the questioning, physical restraints were used, a firearm was drawn, or that Little was threatened. Rather, the deputy asked for Little's consent for a doctor to search him, implying that Little could refuse. After the questioning, Little was booked into the jail. See *Lewis*, 299 Kan. at 835.

While the fact that a defendant was in a locked holding cell during an interrogation may normally support a finding of *Miranda* custody, the routine nature of the questioning as part of the booking process into the jail does not give rise to the same inherently coercive pressures as the type of questioning at issue in *Miranda*. See *Fields*, 565 U.S. at 509. Therefore, Little was not in *Miranda* custody.

Other courts considering similar facts have reached the same conclusion. See *People v. Bowen*, 2015 IL App. (1st) 132046, 38 N. E. 3d 98 (2015); *People v. Cortez*, 299 Mich. App. 679, 832 N.W.2d 1 (2013); *Conriquez v. Paramo*, No. 1:09-CV-01003-SKO-HC, 2012 WL 3069156 (E.D. Cal. 2012) (unpublished opinion).

The district court based its decision in part on the safety interest of the jail officials, citing *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. ___, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012). In *Florence*, the court upheld the strip search of incoming jail detainees, noting that detecting contraband concealed by new detainees is a serious responsibility to ensure the safe operation of the jail. 132 S. Ct. 1513, 1519. It stands to reason that if jail officials may strip search incoming jail inmates for contraband without implicating the inmate's Fourth Amendment search and seizure rights, then those same officials may take the less drastic measure of asking inmates upon entering the jail if they are carrying contraband without implicating the inmate's Fifth Amendment *Miranda* rights. In both cases, the jail has a strong interest in the safe operation of the jail. But the present situation does not fit within the narrow public safety exception to *Miranda*. See *State v. Cosby*, 285 Kan. 230, 241, 169 P.3d 1128 (2007). Rather, the fact that the deputy asked Little a routine question, designed to ensure the safe operation of the jail, is a factor that supports a conclusion that the questioning was not custodial interrogation. See *Fields*, 565 U.S. at 513.

*Even if there was a* Miranda *violation, the physical evidence should not have been excluded.*

Even assuming that the statements Little made in response to questioning by Deputy Houck should have been excluded, no "statements" made by Little were included in the stipulated facts. The parties stipulated as follows:

"1. That defendant, Cory Little, was in custody in the Russell County
    Sheriff's department in the Russell County jail on February 27, 2015.
"2. That on February 27, 2015 the defendant, while in custody at the
    Russell County jail, was interviewed about possibly bringing
    contraband into the Russell County jail.
"3. That the defendant went to the restroom, which was checked prior by
    Deputy Houck to be sure it was clear, and when the defendant exited the restroom an
    item was left in the toilet which appeared to be wrapped in black plastic.

11

"4. That the item left in the toilet that was wrapped in black plastic tape was retrieved by Deputy Houck and was inspected by Under Sheriff Barett and was found to contain tobacco.

"5. That possession of tobacco in the Russell County jail is a violation of the jail rules and considered to be contraband."

Must the physical evidence Little removed from his body cavity after the questioning by Deputy Houck be excluded based on a *Miranda* violation?

Our Supreme Court adheres to the rule that physical evidence located as a result of a suspect's voluntary statements—made while the suspect was in custody but without *Miranda* warnings—can still be admitted at trial because the physical evidence does not implicate the protection against self-incrimination. *Mattox v. State*, 293 Kan. 723, 729, 267 P.3d 746 (2011) (citing *United States v. Patane*, 542 U.S. 630, 124 S. Ct. 2620, 159 L. Ed. 2d 667 [2004]). Therefore, the tobacco would be admissible even if Little's statements were inadmissible.

*There was sufficient evidence that Little had notice.*

Little contends, for the first time on appeal, that his due process rights were violated because there was insufficient evidence that he was given adequate notice that chewing tobacco constituted contraband. In essence, he is raising a sufficiency of the evidence argument based on a due process right to fair notice of what conduct is criminal. Little raised a similar argument in his motion to dismiss before the trial court, which was denied.

This court reviews de novo whether a defendant's due process rights were violated. *State v. Smith-Parker*, 301 Kan. 132, 165, 340 P.3d 485 (2014). When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced

12

that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). Appellate courts do not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

Little was convicted of violating K.S.A. 2014 Supp. 21-5914(a)(1) and (b)(1). The statute provides:

> "(a) Traffic in contraband in a correctional institution or care and treatment facility is, without the consent of the administrator of the correctional institution or care and treatment facility:
>> (1) Introducing or attempting to introduce any item into or upon the grounds of any correctional institution or care and treatment facility."

The statute does not itself define what items are prohibited.

In *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002), our Supreme Court held that it was constitutionally permissible to vest the administrators of correctional institutions with the authority to determine what items constitute contraband, provided that adequate safeguards are in place to ensure the statute is implemented in a constitutional manner. The administrators of correctional institutions must provide persons of common knowledge adequate warning of what conduct is prohibited. Adequate warning is necessary to provide fair notice and to safeguard against arbitrary and discriminatory enforcement of the statute. 273 Kan. at 435.

Little compares his case to *State v. Hackney*, No. 103,495, 2011 WL 2175942, at *6-9 (Kan. App. 2011) (unpublished opinion). In *Hackney*, a panel of this court reversed Hackney's conviction for traffic in contraband in a correctional facility, relying on *Watson*, because there was insufficient evidence that Hackney had any warning that the items he carried into the jail constituted contraband. 2011 WL 2175942, at *6-9. During a

search of Hackney, a jail administrator found several items wrapped up in a sock: a cigarette lighter, two q-tip swabs with burnt ends, one cotton ball, two rubber bands, and a brown leafy substance. 2011 WL 2175942, at *6. The State did not present evidence that the jail rules and regulations were ever reviewed with Hackney. An officer testified that he did not review the rules with new inmates; rather, the officer relied on other inmates to let new inmates know about the rules and regulations book. Jail policy required the rules and regulations book to be in the cell pods; but there was no evidence a rules and regulations book was in Hackney's cell pod. The officer did not know if a lighter was on the list of prohibited items in the book. The court held that the State's circumstantial evidence that Hackney concealed the items from prison authorities was insufficient to sustain his conviction because Hackney could have been concealing the items from other inmates for his own protection. 2011 WL 2175942, at *9.

Here, like in *Hackney*, the deputies did not go over the rules and regulations with new inmates. The inmate rules and regulations booklet was available to inmates as they are booked into the jail, but there was no requirement that the inmate take one. Also, like in *Hackney*, the fact that Little hid the tobacco in a cavity of his body was cited as circumstantial evidence that Little knew that tobacco was contraband.

But unlike *Hackney*, Deputy Houck testified that a list of what is considered contraband was hanging on the wall in the booking room above a table where the inmates are made to stand and "empty their pockets and take their belts off and things such as that." The wall was straight ahead of the holding cell where Little was held. Tobacco and tobacco products were listed as contraband. The booking room was visible from the holding cell. Little had been processed into the jail through that room on many occasions. The list of contraband was posted in many locations throughout the jail, adjacent to the cells and in the bull pen. Also, here, the deputy testified that the inmate rules and regulations booklet stated that tobacco was considered contraband.

14

When viewed as a whole, the evidence that there were written warnings posted throughout the jail that clearly stated tobacco and tobacco products constituted contraband, that Little had previously been in the jail, and that Little hid the tobacco from the deputy, is sufficient evidence that Little had adequate warning that tobacco constituted contraband.

Affirmed.