

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-25-00110-CR

Richard Charles Hernandez, Appellant

v.

The State of Texas, Appellee

On Appeal from the 379th District Court
Bexar County, Texas
Trial Court No. 2024CR5251

## MEMORANDUM OPINION[1]

Appellant Richard Charles Hernandez appeals his conviction for possessing or concealing

a deadly weapon in a penal institution. Finding no error, we affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. BACKGROUND

Hernandez was incarcerated on an unrelated conviction when Corporal Bryan Salazar found contraband on Hernandez's bunk in a cell that he shared with another inmate. At trial, Salazar testified that on March 20, 2024, he was escorting Hernandez back to his cell after a court appearance. According to protocol, Hernandez was handcuffed and, once they reached his cell, Salazar did a quick visual inspection. Salazar saw pillows on Hernandez's bunk. Pillows are not allowed in the jail and are considered contraband. When Salazar picked up the pillows, he found a "broom handle, which appeared to be wrapped with a piece of metal with a cloth from a sheet." Salazar described it as a makeshift axe which could cause serious bodily injury.

Before Salazar could testify about any statements made by Hernandez, the trial court conducted a hearing outside of the presence of the jury to determine if the statements were admissible. Salazar testified that after he found the contraband, he asked who it belonged to and Hernandez said it was his. He then asked Hernandez what he used the axe for, and Hernandez told him that it was "not an axe but a tool that he uses to break the intercom boxes and pull the wire from [them]." Salazar said that they were still in the cell when these questions were asked and that he did not read Hernandez any rights or record the interaction. Without Hernandez's statements, the only evidence that the homemade axe was possessed or concealed by Hernandez—instead of someone else such as his cellmate—was the circumstantial evidence that it was found on Hernandez's bunk.

Following the hearing regarding the circumstances surrounding Hernandez's responses to Salazar's questions upon his return to his jail cell, the trial court ruled that Hernandez's statements

were admissible and Salazar was allowed to testify about the statements. The jury convicted Hernandez of deadly weapon in a penal institution, and the trial court sentenced him to 25 years.[2]

Hernandez raises two issues in this appeal. In his first issue, he argues that the trial court erred by denying his motion to suppress. In his second issue, Hernandez claims that the jury verdict was defective because it did not include every element that the jury needed to find to convict him.

## II. MOTION TO SUPPRESS

Hernandez argues that the trial court erred in admitting his statement to Salazar that the homemade axe was his because he was not warned of his rights.

### A. Applicable law and standard of review

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself [.]" U.S. Const. amend. V. To guarantee that right, statements made during a custodial interrogation cannot be used by the prosecution unless "[p]rior to any questioning, the person [is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Texas Code of Criminal Procedure requires those same custodial interrogation warnings and an additional notice to the accused that he "has the right to terminate the interview at any time." Tex. Code Crim. Proc. art. 38.22 § 2(a). It is undisputed that the warnings were not given to Hernandez before he stated the axe belonged to him. The issue before us is whether Hernandez was in custody. *Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (under *Miranda* and the Code of Criminal Procedure, warnings "are required only when there is a *custodial* interrogation") (emphasis added).

---

[2] The crime, a third-degree felony, was enhanced to a first-degree felony because of prior convictions for murder and assault family violence (2nd offense). Tex. Penal Code §§ 12.42; 46.10(d).

Generally, an interrogation is custodial "only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id*. at 525–26 (citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996) and *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)). A person who is incarcerated is in "custody" in the regular sense of the word, but that does not mean that every question asked of him during his incarceration is custodial interrogation. As held by the Court of Criminal Appeals, "incarceration does not always constitute 'custody' for *Miranda* purposes when an inmate is questioned by law enforcement officials 'regarding an offense separate and distinct from the offense for which he was incarcerated.'" *Id*. at 531 (quoting *United States v. Menzer*, 29 F.3d 1223, 1231 (7th Cir. 1994)).

In determining whether an incarcerated person was in custody for the purposes of *Miranda*, we consider the following non-exclusive factors:

- the language used to summon the inmate;
- the physical surroundings of the interrogation;
- the extent to which the inmate is confronted with evidence of his or her guilt;
- the additional pressure exerted to detain the inmate or the change in the surroundings of the inmate which results in an added imposition on the inmate's freedom of movement; and
- the inmate's freedom to leave the scene and the purpose, place, and length of the questioning.

*Id.* at 532.

To suppress the evidence, the defendant has the burden of proving that he was in custody when he made the statement. *Id*. at 526 Custody is a mixed question of law and fact. *Id.* For questions of fact that rely on the witness's credibility and demeanor, we defer to the trial court's findings or, if none were made, "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id*. at 526–27. When the finding of custody is not based on "questions of historical fact," we review the ruling *de novo*. *Id*.

4

The parties do not dispute the facts surrounding Hernandez's questioning; they only dispute whether those facts amount to Hernandez being in custody for *Miranda* purposes. Our review is therefore *de novo.*

**B. Analysis**

The trial court applied the factors discussed in *Herrera*. In ruling that Hernandez was not in custody, the trial court stated:

> Considering the language in the *Herrera* case that the . . . deputy used in communications with the defendant, examining the physical surroundings, being inside the defendant's cell; examining whether there was additional pressure . . . exerted upon the defendant; . . . the extent to which the defendant was confronted with evidence of guilt of having the contraband, . . . and the spontaneous nature of the conversation, I'm going to overrule the defense objection and admit the statements that the deputy has testified to.

We agree with the trial court's conclusion that Salazar's questions were not made while Hernandez was under a *custodial* interrogation.

This case is similar to a Ninth Circuit Court of Appeals case, *Cervantes v. Walker*, which the Court of Criminal Appeals cited with approval in *Herrera v. State. Herrera*, 241 at 527–28. In *Cervantes*, a deputy discovered a matchbox containing a green substance while inspecting an inmate's belongings before moving him to a new cell. *Cervantes v. Walker*, 589 F.2d 424, 426–27 (9th Cir. 1978). The deputy asked Cervantes, "What's this?" and Cervantes responded that it was marijuana. *Id*. Even though Cervantes, like Hernandez in this case, was incarcerated and gave an incriminating answer to a question asked by a law enforcement officer, the court held that the question was more like "on-the-scene questioning" by the officer "to determine whether a crime has been committed or is in progress" for which no *Miranda* warnings need to be given. *Id.* The Ninth Circuit explained the factors that led to its decision that no warnings were necessary:

> The marijuana was uncovered in the course of a routine search. Jopes' question sought to ascertain the nature of the substance. The questioning took place in the

> prison library and appears to have been a spontaneous reaction to the discovery. Under these circumstances, we also conclude that neither the prison setting nor the presence of [prison guards] exerted a pressure to detain sufficient to have caused a reasonable person to believe his freedom of movement had been further diminished. Rather, this was an instance of on-the-scene questioning enabling Jopes to determine whether a crime was in progress.

*Id*. at 429. Similar to the questioning in *Cervantes*, Salazar did not summon Hernandez for questioning; instead, his question about who the axe belonged to "appears to have been a spontaneous reaction to the discovery" of contraband on Hernandez's bunk; Salazar's discovery and questions were part of "a routine search" upon escorting Hernandez back to his cell after a court appearance. *Id.*

Hernandez relies on the Supreme Court's decision in *Howes v. Field*. But *Howes* also supports the trial court's ruling that Hernandez was not subjected to custodial questioning. In *Howes*, an inmate was taken to a conference room in the jail and questioned for five to seven hours about allegations that he engaged in sexual conduct with a minor. *Howes v. Fields*, 565 U.S. 499, 502–03 (2012). The two deputies that interviewed him were armed, but the inmate was not handcuffed. *Id*. at 503. The deputies twice told the inmate that he could return to his cell whenever he wanted, but at times the door to the conference room was closed. *Id.* The inmate also told the deputies several times that "he no longer wanted to talk to [them]" but he never asked to end the interview. *Id.*

The *Howes* Court, like the courts in *Herrera* and *Cervantes*, stated that "the determination of custody should focus on all the features of the interrogation. These include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id*. at 514. The Court held that the factors weighing in favor of finding that the interrogation was custodial "were offset by others." *Id*. at 515 It explained:

6

> Most important, respondent was told at the outset of the interrogation, and was reminded again thereafter, that he could leave and go back to his cell whenever he wanted. Moreover, respondent was not physically restrained or threatened and was interviewed in a well-lit, average-sized conference room, where he was "not uncomfortable." He was offered food and water, and the door to the conference room was sometimes left open.

*Id*. (cleaned up).

The Court held that the questioning was not a custodial interrogation because "[a]ll of these objective facts are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)).[3]

Although Hernandez was not, like the defendant in *Howes*, told that he could leave and return to his cell, he was already in his cell when Salazar asked who the axe belonged to. He was not experiencing detention beyond what he normally experienced as an inmate. And, although he was restrained by handcuffs, it was not for the purposes of restraining him for an interrogation, but because immediately before Salazar's questions, he was being escorted back to his cell following a court hearing. No additional pressure or threats were exerted as part of an interrogation. In viewing the totality of the circumstances, the questioning in this case is less coercive than in *Howes*. Hernandez responded to the general question about ownership admitting that the contraband was his and not interrogated for hours while being separated from the general prison population or his usual location.

---

[3] In *Howes v. Fields*, the Court stated, "Taking a prisoner aside for questioning—as opposed to questioning the prisoner in the presence of fellow inmates—does not necessarily convert a 'noncustodial situation . . . to one in which *Miranda* applies.'" *Howes v. Fields*, 565 U.S. 499, 512 (2012) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Hernandez contorts this statement to mean that the location of the questioning is not relevant. *Howes* actually confirms that the location of questioning is a factor to consider; its holding is only that removing an inmate from the general population is not *by itself* enough to show that the questioning is custodial. *Id*. at 508–09 (listing relevant factors which include the location of the questioning).

We hold that a reasonable person in Hernandez's situation would not have "believe[d] that his freedom of movement was restrained to the degree associated with a formal arrest." *Herrera*, 241 S.W.3d at 525. Hernandez was not in custody for the purposes of *Miranda* when Salazar asked who the axe belonged to and what the axe was used for. His statements in response to Salazar's questions were admissible despite the lack of *Miranda* warnings. We overrule Hernandez's first issue.

## III. VERDICT FORM

"A person commits the offense of deadly weapon in penal institution if, while confined in a penal institution, he intentionally, knowingly, or recklessly [] (1) carries on or about his person a deadly weapon or (2) possesses or conceals a deadly weapon in the penal institution." Tex. Penal Code § 46.10(a). The indictment alleged that Hernandez possessed and concealed a deadly weapon in a penal institution.

The verdict form gave the jury two options—finding Hernandez not guilty or finding him guilty of "the offense of Deadly Weapon in a Penal Institution as charged in the indictment." The verdict form does not recite that he must have possessed or concealed the weapon. Hernandez argues that the verdict form was defective because it allowed the jury to find him guilty without finding that he possessed or concealed the weapon, a legal element of the offense.

### A. Applicable law and standard of review

A jury charge must "distinctly set[] forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14. A jury charge is comprised of several components. The abstract portion "serve[s] as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The

8

application paragraph "applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations" and "specifies the factual circumstances under which the jury should convict or acquit." *Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). A verdict form is the part of the jury charge on which the jury indicates whether it has found the defendant guilty or not guilty. *Jennings v. State*, 302 S.W.3d 306, 307 (Tex. Crim. App. 2010).

We review a jury charge for error in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether there is error in the charge and then we determine if that error harmed the defendant. *Id.* If there is error, then the second step is to determine the harm to the defendant. *Id*. The "degree of harm required for reversal depends on whether the error was preserved." *Id.*; Tex. Code Crim. Proc. art. 36.19. To obtain relief on appeal, the record must show egregious harm if error was not preserved and only some harm if error was preserved. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

### B. Analysis

"In examining the charge for possible error, reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). Hernandez is correct that the verdict form included the name of the offense as it is titled in the Penal Code, but not the elements of the offense. Tex. Penal Code § 46.10. However, there is no requirement that it do so. In fact, a jury charge does not even have to include a verdict form, and when it does, the only requirement is that it "set out every 'guilty' or 'not guilty' option that is

9

available to the jury." *Jennings*, 302 S.W.3d at 310. As stated above, it is the application paragraph that specifies what facts the jury must find to render its verdict.

The application paragraph of the jury charge in this case correctly instructed the jury that it must find that Hernandez *possessed* or *concealed* the weapon:

> Now, if you unanimously find from the evidence beyond a reasonable doubt that on or about the 20th Day of March, 2024, in Bexar County, Texas, the defendant, Richard Charles Hernandez, while confined in a penal institution, namely: Bexar County Adult Detention Center, did intentionally or knowingly possess or conceal in said penal institution a deadly weapon, to wit: an axe;
> Then you will find the defendant, Richard Charles Hernandez, guilty of the offense of Deadly Weapon in a Penal Institution as charged in the indictment.
> If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant, Richard Charles Hernandez, not guilty.

Because the jury charge instructed the jury on the elements they needed to find to convict Hernandez of the offense of deadly weapon in a penal institution, it was not erroneous.[4] We overrule Hernandez's second issue.

## IV. CONCLUSION

Having found no error in the admission of Hernandez's inculpatory statement or the jury charge, we affirm the judgment.

MARIA SALAS MENDOZA, Chief Justice

June 8, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

---

[4] The only case Hernandez cites in support of his second issue is *United States v. Fairley*, 880 F.3d 198 (5th Cir. 2018). The court in that case reviewed the charge as a whole and found error because *no* component of the charge correctly listed the offense's elements. *Fairley*, 880 F.3d at 208, 210. *Fairley* does not hold that a charge which includes correct instructions about the elements must repeat those elements in the verdict form.

10